UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MIGUEL MANSO,

                Defendant.

**DECISION AND ORDER**

13-CR-83S

---

**I) INTRODUCTION**

Pending before the Court is a motion (Dkt. Nos. 230, 231) by defendant Miguel Manso ("Manso") for reconsideration of its prior denial of bail on May 10, 2013 (Dkt. No. 41).  Manso revisits some of the arguments that he made at his detention hearing on May 10, 2013, including arguments concerning the strength of the evidence against him and the timing of his move to Boston, Massachusetts after speaking with investigators.  Principally, though, Manso argues that his wife's deteriorating health constitutes a change in circumstances and that release will allow him to tend to her daily medical needs.  The Government opposes the motion by arguing that Manso has several siblings who live near his wife and who could tend to her.  Apart from the medical issue, the Government concludes that Manso has not pointed to any change of circumstances that would warrant revisiting the Court's prior findings of flight risk and danger.  The United States Probation Office ("USPO") recommends continued detention.

The Court held a bail review hearing on November 12, 2014. For the reasons below, the Court denies the motion.

## II) BACKGROUND

This case concerns allegations that Manso helped run a drug premises as part of a large drug operation in Buffalo, New York. The Government filed an indictment against Manso and others on April 5, 2013. (Dkt. No. 10.) The indictment contains two counts against Manso. In Count One, the Government states that Manso and others "did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown, to commit the following offenses, that is, to possess with intent to distribute, and to distribute, 1 kilogram or more of a mixture and substance containing heroin, a Schedule I controlled substance, and a quantity of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C). All in violation of Title 21, United States Code, Section 846." (*Id.* at 2.) In Count Two, the Government states that Manso and others "did knowingly, intentionally and unlawfully use and maintain a place, that is, the premises at 24 10th Street, Buffalo, New York, for the purpose of manufacturing, distributing and using heroin, a Schedule I controlled substance. All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2." (*Id.* at 3.) The Court (Hon. H. Kenneth Schroeder, Jr., covering) arraigned Manso on May 2, 2013.

The Court reviewed Manso's detention status once before, during a detention hearing on May 10, 2013.  Among other facts, the Government proffered that Manso lived a nomadic life with stronger ties to Boston than Western New York.  The Government proffered further that agents from the Federal Bureau of Investigation ("FBI") interviewed Manso in February 2013 and that Manso admitted to drug sales.  FBI agents allegedly told Manso to stay in the area because they would return.  The Government proffered that, when an arrest warrant eventually issued, FBI agents had to find Manso in Boston because he and his family moved there without telling them.  Finally, the Government proffered at the detention hearing that evidence against Manso included controlled buys, wiretapped telephone conversations, video from pole cameras, and observations of Manso putting a bookbag with $76,000 cash in a vehicle on 10th Street when law enforcement agents searched the alleged drug premises in question.  Manso countered by stressing his family ties in the area and by denying or downplaying the amount of evidence that the Government claimed to have.  As for the move to Boston, Manso countered that he and his family planned it before his FBI interview because he wanted to look for work as a full-time mechanic.  FBI agents allegedly told Manso that he was not a "threat" or a "major player."  Agents found Manso at the Boston address that they had on file.  Manso concluded that he was making no effort to hide from agents and rejected any insinuation that he was fleeing from them.  The Court found Manso

3

to be a flight risk by a preponderance of the evidence and a danger by clear and convincing evidence and ordered Manso detained.

Manso filed the pending motion on November 5, 2014 and advances several arguments for reconsideration.  Manso emphasizes again that he considers the Government's evidence against him weak and that he poses no danger to the community.  Manso again rejects any suggestion that he is a flight risk; according to Manso, he planned his family's move before his interview, and agents found him in Boston at a known address.  Most importantly, though, Manso asserts a new circumstance to justify reconsideration, namely his wife's health.  Manso has a common-law wife in Boston; he and his wife have been together for approximately 23 years and have two children.  Manso's wife suffers from pulmonary arterial hypertension and right heart failure.  A note from Manso's wife's physician (Dkt. No. 231-1) suggests that Manso's wife theoretically can administer her own treatments.  The physician offers the opinion, however, that Manso's wife would benefit a lot from having an adult caretaker help her with her medical needs, especially given the advanced nature of her condition.  Consequently, Manso asks for release to the District of Massachusetts, where he can live with his wife under bail conditions and care for her.

The Government opposes the pending motion.  The Government stands by its claim that Manso tried to hide from law enforcement agents by moving to

Boston without telling them.  The Government also emphasizes the strength of the evidence against Manso, including his own inculpatory statements and his direct involvement in controlled drug buys and in handling $76,000 of drug proceeds.  As for the issue of Manso's wife's health, the Government indicates that Manso has at least four adult siblings in the Boston area who can help.  In the Government's view, Manso's wife's situation is unfortunate but does not by itself offset Manso's criminal history, pending charges, and likely mandatory minimum sentence if convicted.

## III) DISCUSSION

Once the Court has issued a detention order, as it has once before regarding this defendant, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f)(2).  "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event."  *U.S. v. Jerdine,* No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted).  Where evidence was available to

defendant at the time of the hearing, the hearing will not be reopened. See *U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, the only circumstance that has changed since the Court's last bail determination concerns Manso's wife and her medical condition. Manso's argument about his wife presents two problems. First, the Court lacks details regarding Manso's wife's condition. The Court does not know whether Manso's wife has had other medical problems that predated parts of Manso's criminal history. If so then Manso's criminal history potentially establishes conduct that received a higher priority than his wife's health. The Court also does not know what "specialty training" Manso would have to receive to manage his wife's daily medication and why Manso is more suited to this training than his siblings who already live in the Boston area. Second, the Court is wary of the policy implications of Manso's request to help with his family's hardship. "[I]f [the Court] determined such personal hardships qualified to prevent or delay detention, then inevitably defendants committing the same offenses would be treated disparately for reasons unrelated to their crimes or personal character. A drug trafficker with no family would immediately go to jail while a drug trafficker convicted of the same offense with a family would remain on bail. Such disparity unrelated to the offense or personal character of the particular defendant would be contrary to the goals of the federal criminal legal system and would not be a desirable objective

of a just system of law." *U.S. v. Burnett*, 76 F. Supp. 2d 846, 850 (E.D. Tenn. 1999); *accord U.S. v. Lippold*, 175 F. Supp. 2d 537, 540 (S.D.N.Y. 2001) (citations omitted). Admittedly, *Burnett* and *Lippold* concerned post-conviction defendants who bore the heavy burden of demonstrating "exceptional reasons" for release under 18 U.S.C. § 3145(c). The principle remains, though, that crediting personal hardships can lead to disparate treatment of otherwise similarly situated defendants. The detention factors in 18 U.S.C. § 3142(g) do not appear to allow the Court to override concerns about flight and danger to the community because of personal hardships alone.

Under these circumstances, the Court finds that the factors most relevant to Manso's custody status have not changed. The Court is content to let its prior detention order stand as is.

## IV) CONCLUSION

For all of the foregoing reasons, the Court denies Manso's pending motion (Dkt. Nos. 230, 231).

Manso will remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's continued order of detention, and pursuant to 18 U.S.C. § 3142(i)(3), the Attorney General must afford Manso reasonable opportunity for private consultation with counsel. *See also U.S. v. Rodriguez*,
7

No. 12-CR-83S, 2014 WL 4094561 (W.D.N.Y. Aug. 18, 2014) (Scott, *M.J.*). Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which Manso is confined must deliver Manso to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order will be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                                                /s/ Hugh B. Scott
                                                             HONORABLE HUGH B. SCOTT
                                                             UNITED STATES MAGISTRATE JUDGE

DATED: November 25, 2014